IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB WINDING dba TOP TO BOTTOM CLEANING SERVICE,<br><br>            Plaintiff,<br><br>      vs.<br><br>CAL-WESTERN RECONVEYANCE CORPORATION, et al.,<br><br>            Defendants.<br>_____/ | CASE NO. CV F 10-0041 LJO GSA<br><br>**ORDER ON WELLS FARGO'S F.R.Civ.P. 12 MOTION TO DISMISS**<br>(Docs. 4,5.) |

**INTRODUCTION**

Defendant Wells Fargo, N.A. ("Wells Fargo") seeks to dismiss as legally barred and federally preempted pro se plaintiff Jacob Winding dba Top To Bottom Cleaning Service's ("Mr. Winding's") claims arising from foreclosure of a Modesto property ("property"). This Court considered Wells Fargo's F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the February 28, 2011 hearing, pursuant to Local Rule 230(g). For the reasons discussed below, this Court DISMISSES this action against Wells Fargo.[1]

///

---

[1] With dismissal of this action against Wells Fargo, this Court need not address Well Fargo's motion to strike punitive damage allegations and claims.

1

# BACKGROUND

## Property Loan

On November 5, 2007, World Savings Bank, FSB ("World Savings") lent $182,000 to Warner and Iris Bowers (collectively "Mr. and Mrs. Bowers") secured by a first deed of trust recorded against the property.[2]

World Savings, chartered as a federal savings bank, changed its name to Wachovia Mortgage, FSB on December 31, 2007 and to Wachovia Mortgage, a division of Wells Fargo, on November 1, 2009.

After the loan fell into default, Wells Fargo (at that time operating under the name Wachovia Mortgage, FSB) recorded a notice of default on December 12, 2008.

On August 18, 2009, a second deed of trust was recorded against the property and named "Jacob Winding" as trustee and "TTB Services inc [sic], a California Corporation" as beneficiary.

On December 7, 2009, Mr. and Mrs. Bowers quitclaimed their interest in the property to TTB Services Inc. On April 1, 2010, a corporation grant deed was recorded by which TTB Services Inc. purportedly conveyed the property to Top To Bottom Cleaning Service.

On July 12, 2010, defendant Cal-Western Reconveyance Corporation ("Cal-Western"), as appointed trustee under the deed of trust for the World Savings loan, recorded a notice of trustee's sale for the property. Ridge Capital Investments took title to the property at a November 5, 2010 trustee's sale.

## Mr. Winding's Claims

On November 12, 2010, prior to Wells Fargo's removal to this Court, Mr. Winding filed in Stanislaus County Superior Court his complaint ("complaint") to take issue with promissory note ownership, to challenge the foreclosure sale, and to allege California property and tort claims, which will be discussed in greater detail below. The complaint seeks special, general and punitive damages and to enjoin interference with Mr. Winding's "existing business."

/ / /

---

[2] Documents pertaining to the loan and its default were recorded with the Stanislaus County Recorder.

# DISCUSSION

## F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

Wells Fargo seeks to dismiss Mr. Winding's claims as legally barred and preempted by federal law.

"A trial court may dismiss a claim sua sponte under Fed.R.Civ.P. 12(b)(6). . . . Such dismissal may be made without notice where the claimant cannot possibly win relief." *Omar v. Sea-Land Service, Inc.*, 813 F.2d 986, 991 (9th Cir. 1987); *see Wong v. Bell*, 642 F.2d 359, 361-362 (9th Cir. 1981). Sua sponte dismissal may be made before process is served on defendants. *Neitzke v. Williams*, 490 U.S. 319, 324 (1989) (dismissals under 28 U.S.C. § 1915(d) are often made sua sponte); *Franklin v. Murphy*, 745 F.2d 1221, 1226 (9th Cir. 1984) (court may dismiss frivolous in forma pauperis action sua sponte prior to service of process on defendants).

"When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

In addressing dismissal, a court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and a court must not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not

been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983). A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court recently explained:

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, __ U.S. __, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer

4

more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, __ U.S. __, 129 S.Ct. at 1949-1950.

For a F.R.Civ.P. 12(b)(6) motion, a court generally cannot consider material outside the complaint. *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003). Nonetheless, a court may consider exhibits submitted with the complaint. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987);*Van Winkle*, 290 F.Supp.2d at 1162, n. 2.  In addition, a "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  A court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003).  Such consideration prevents "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).[3]   A "court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)). Moreover, "judicial notice may be taken of a fact to show that a complaint does not state a cause of action." *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.*, 245 F.2d 67, 70 (9th Cir. 1956); *see Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th Cir. 1997).  A court properly may take judicial notice of matters of public record outside the pleadings'" and consider them for purposes of the motion to dismiss. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649

---

[3] "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino*, 146 F.3d at 706).

5

1  (9th Cir. 1988) (citation omitted).

2  As discussed below, the complaint is subject to dismissal in the absence of claims supported by a cognizable legal theory or sufficient facts alleged under a cognizable legal theory. In addition, the complaint is susceptible to defenses and federal preemption of claims.

### Appearing Without Counsel

Wells Fargo contends that since Top To Bottom Cleaning is a multi-partner partnership and claims an interest in the property, Mr. Winding is unable to represent Top To Bottom Cleaning pro se.

The complaint alleges that Top To Bottom Cleaning Service is a licensed partnership and that Mr. Winding "owns and operates" the partnership which purportedly took title to the property. The complaint's signature block is for "Jacob Winding, Plaintiff – In Pro Per."

Wells Fargo notes that Mr. Winding litigates this action for a "licensed partnership" although California State Bar records reveal he is not a licensed California attorney. Wells Fargo concludes that Mr. Winding practices "law without a license."

"Corporations and other unincorporated associations must appear in court through an attorney." *In re America West Airlines*, 40 F.3d 1058, 1059 (9th Cir. 1994); *see C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697-98 (9th Cir.1987); *Church of the New Testament v. United States*, 783 F.2d 771, 773-74 (9th Cir.1986); *see also Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1309-10 (2d Cir.1991) (partnership not allowed to be represented by non-attorney partner). All artificial entities must appear in federal court through counsel. *Rowland v. California Men's Colony*, 506 U.S. 194, 202, 113 S.Ct. 716, 721 (1993). This Court's Local Rule 183 provides: "A corporation or other entity may appear only by an attorney."

Top To Bottom Cleaning must appear through an attorney, not Mr. Winding, to warrant dismissal of claims on its behalf.

### Providing Original Promissory Note

The complaint's (first) wrongful conversion claim holds Wells Fargo to produce the original promissory note for Mr. and Mrs. Bowers' loan to validate foreclosure of the property. The claim alleges that "plaintiff requested that the defendants produce evidence that the beneficiary owned the promissory note 'negotiable Instrument' which would stipulate the holder in due course of the

6

'Premises.'"

Wells Fargo is correct that "producing the original note is not a condition of nonjudicial foreclosure."

Under California law, a lender may pursue non-judicial foreclosure upon default with a deed of trust with a power of sale clause. "Financing or refinancing of real property is generally accomplished in California through a deed of trust. The borrower (trustor) executes a promissory note and deed of trust, thereby transferring an interest in the property to the lender (beneficiary) as security for repayment of the loan." *Bartold v. Glendale Federal Bank,* 81 Cal.App.4th 816, 821, 97 Cal.Rptr.2d 226 (2000). A deed of trust "entitles the lender to reach some asset of the debtor if the note is not paid." *Alliance Mortgage Co. v. Rothwell,* 10 Cal.4th 1226, 1235, 44 Cal.Rptr.2d 352 (1995).

If a borrower defaults on a loan and the deed of trust contains a power of sale clause, the lender may non-judicially foreclose. *See McDonald v. Smoke Creek Live Stock Co.*, 209 Cal. 231, 236-237, 286 P. 693 (1930). The California Court of Appeal has explained non-judicial foreclosure under the applicable California Civil Code sections:

> The comprehensive statutory framework established to govern nonjudicial foreclosure sales is intended to be exhaustive. . . . It includes a myriad of rules relating to notice and right to cure. It would be inconsistent with the comprehensive and exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another unrelated cure provision into statutory nonjudicial foreclosure proceedings.

*Moeller v. Lien,* 25 Cal.App.4th 822, 834, 30 Cal.Rptr.2d 777 (1994); *see I.E. Assoc. v. Safeco Title Ins. Co.*, 39 Cal.3d 281, 285, 216 Cal.Rptr. 438 (1985) ("These provisions cover every aspect of exercise of the power of sale contained in a deed of trust.")

Under California Civil Code section 2924(a)(1), a "trustee, mortgagee or beneficiary or any of their authorized agents" may conduct the foreclosure process. Under California Civil Code section 2924b(4), a "person authorized to record the notice of default or the notice of sale" includes "an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee." "Upon default by the trustor, the beneficiary may declare a default and proceed with a nonjudicial foreclosure sale." *Moeller*, 25 Cal.App.4th at 830, 30 Cal.Rptr.2d 777.

A "trustee or mortgagee may be liable to the trustor or mortgagor for damages sustained where

there has been an illegal, fraudulent or wilfully oppressive sale of property under a power of sale contained in a mortgage or deed of trust." *Munger v. Moore*, 11 Cal.App.3d 1, 7, 89 Cal.Rptr. 323 (1970).

"Under Civil Code section 2924, no party needs to physically possess the promissory note." *Sicairos v. NDEX West, LLC*, 2009 WL 385855, *3 (S.D. Cal. 2009) (citing Cal. Civ. Code, § 2924(a)(1)). Rather, "[t]he foreclosure process is commenced by the recording of a notice of default and election to sell by the trustee." *Moeller*, 25 Cal.App.4th at 830, 30 Cal.Rptr.2d 777. An "allegation that the trustee did not have the original note or had not received it is insufficient to render the foreclosure proceeding invalid." *Neal v. Juarez*, 2007 WL 2140640, *8 (S.D. Cal. 2007).

A purported "negotiable interest" challenge fails as a matter of law to warrant dismissal of the complaint's wrongful conversion and other claims which are permeated with "note ownership" allegations. The record lacks facts of failure to comply with the statutory scheme for non-judicial foreclosure. A purported wrongful foreclosure claim fails, especially in the absence of allegations of misconduct in the foreclosure proceedings to further doom Mr. Winding's claims.

## Quiet Title

The complaint's (second) quiet title claim alleges "a cloud on title to the property" in that "the Trustees [sic] sale was invalid since the beneficiary did not own the promissory note 'negotiable Instrument' secured by the deed of trust as of the date of the purported sale."

Wells Fargo challenges the quiet title claim as lacking necessary elements.

California Code of Civil Procedure section 760.010 provides for an action "to establish title against adverse claims to real or personal property or any interest therein." California Code of Civil Procedure section 761.020 mandates a "verified" complaint for a quiet title action to include:

 1. A legal description and street address of the subject real property;
 2. The title of plaintiff as to which determination is sought and the basis of the title;
 3. The adverse claims to the title of the plaintiff against which a determination is sought;
 4. The date as of which the determination is sought; and
 5. A prayer for the determination of the title of the plaintiff against the adverse claims.

The quiet title remedy "is cumulative and not exclusive of any other remedy, form or right of action, or

proceeding provided by law for establishing or quieting title to property." Cal. Code Civ. Proc., § 760.030.

Mr. Winding did not file a verified complaint. The complaint he filed lacks facts as to the title of which Mr. Winding seeks determination and the basis of Mr. Winding's purported title. The complaint merely alleges that Mr. Winding's "business did and at all time relevant purchase the Deed to the improved real property." A quiet title claim requires an allegation that the plaintiffs "are the rightful owners of the property, i.e., that they have satisfied their obligations under the Deed of Trust." *See Kelley v. Mortgage Electronic Registration Systems, Inc.*, 642 F.Supp.2d 1048, 1057 (N.D. Cal. 2009). The complaint lacks an allegation that Mr. Winding is a rightful owner of the property with satisfaction of deed of trust obligations and thus lacks a properly pled quiet title claim.

Wells Fargo points out that when it foreclosed on the property, Top To Bottom Cleaning Service's purported title was extinguished. California Civil Code section 1214 provides: "Every conveyance of real property . . . is void as against any subsequent purchaser or mortgagee of the same property . . . whose conveyance is first duly recorded . . ."

In addition, a purported quiet title claim is doomed in the absence of a tender of amounts owed. "It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured." *Shimpones v. Stickney*, 219 Cal. 637, 649, 28 P.2d 673 (1934). "A party may not without payment of the debt, enjoin a sale by a trustee under a power conferred by a deed of trust, or have his title quieted against the purchaser at such a sale, even though the statute of limitations has run against the indebtedness." *Sipe v. McKenna*, 88 Cal.App.2d 1001, 1006, 200 P.2d 61 (1948); *see Mix v. Sodd*, 126 Cal.App.3d 386, 390, 178 Cal.Rptr. 736 (1981) ("a mortgagor in possession may not maintain an action to quiet title, even though the debt is unenforceable"); *Aguilar v. Bocci*, 39 Cal.App.3d 475, 477, 114 Cal.Rptr. 91 (1974) (trustor is unable to quiet title "without discharging his debt. The cloud upon his title persists until the debt is paid.").

"A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." *Karlsen v. American Sav. & Loan Assn.,* 15 Cal.App.3d 112, 117,  92 Cal.Rptr. 851 (1971). An "action to set aside the sale, unaccompanied by an offer to redeem, would not state a cause of action which a court of equity would recognize." *Copsey v.*

*Sacramento Bank*, 133 Cal. 659, 662, 66 P. 7 (1901).

Mr. Winding is unable to re-acquire good title to the foreclosed property without paying or tendering the outstanding indebtedness. With the complaint's absence of a meaningful ability or willingness to tender the indebtedness, a purported quiet title claim fails. This Court is not in a position to award Mr. Winding a windfall.

**Tortious Interference With Contractual Relations**

The complaint's (third) tortious interference with contractual relations claim alleges that posting the trustee's sale notice on the property caused the property's tenant "to cancel its contract" with Mr. Winding. The claim further alleges that the posting indicated that Mr. Winding "was engaged in the business of unauthorized renting" of the property.

Wells Fargo challenges the absence of facts to support elements of an interference with contract claim.

The elements of intentional interference with contractual relations claim are "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1126, 270 Cal.Rptr. 1 (1990).

Wells Fargo notes that it was required to post the notice of trustee's sale pursuant to California Civil Code section 2924f(b)(1) which provides that "before any sale of property can be made under the power of sale contained in any deed of trust . . . notice of the sale thereof shall be given by posting a written notice of the time of sale . . . . A copy of the notice of sale shall also be posted in a conspicuous place on the property to be sold . . . . If the property is a single-family residence the posting shall be on a door of the residence . . ."

Wells Fargo is correct that compliance with statutory posting requirements is not an act "designed to induce breach or disruption of the contractual relationship." Moreover, the complaint lacks facts of Wells Fargo's knowledge of the purported lease agreement. The complaint lacks facts to support elements of intentional interference with contractual relations to warrant the claim's dismissal.

Wells Fargo further notes that posting of the trustee's sale was privileged under California Civil

Code section 2924(d) ("section 2924(d)"), which renders as California Civil Code section 47 "privileged communications" the "mailing, publication, and delivery" of foreclosure notices and "performance" of foreclosure procedures. The section 2924(d) privilege extended through California Civil Code section 47 applies to tort claims other than malicious prosecution. *Hagberg v. California Federal Bank FSB*, 32 Cal.4th 350, 361 81 P.3d 244 (2004) ("As noted, the only tort claim we have identified as falling outside the privilege established by section 47(b) is malicious prosecution.")

Wells Fargo's alleged wrongs are subject to section 2924(d) immunity. In the absence of meaningful, fact-based allegations of Wells Fargo's malice, section immunity 2924(d) bars purported claims based on California torts, including intentional interference with contractual relations.

### Conversion

The complaint's (fourth) conversion claim alleges the Wells Fargo "took" the property "title and right to ownership from plaintiff's possession and converted it to its own use."

Wells Fargo correctly notes the absence of a conversion claim as to real property. "Conversion is the wrongful exercise of dominion over personal property of another." 5 Witkin, *Summary of California Law*, Torts (10th ed. 2005), § 699, p. 1023. "[C]onversion is a tort that may be committed only with relation to personal property and not real property." *Munger v. Moore*, 11 Cal.App.3d 1, 7, 89 Cal.Rptr. 323 (1970).

The complaint fails to allege a valid conversion claim. The conversion claim is subject to dismissal.

### Emotional Distress

The complaint's (fifth) infliction of emotional distress claim alleges that Wells Fargo's conduct "was intentional and malicious and done for the purpose of causing plaintiff to suffer humiliation, mental anguish, and emotional and physical distress."

Wells Fargo explains that its exercise of default rights and remedies fails to support an intentional infliction of emotional distress ("IIED") claim.

The elements of an IIED claim are: (1) defendant's outrageous conduct; (2) defendant's intention to cause, or reckless disregard of the probability of causing, emotional distress; (3) plaintiff's suffering severe or extreme emotional distress; and (4) an actual and proximate causal link between the tortious

(outrageous) conduct and the emotional distress. *Nally v. Grace Community Church of the Valley*, 47 Cal.3d 278, 300, 253 Cal.Rptr. 97, 110 (1988), *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1644 (1989)*; Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal.3d 148, 155, n. 7, 233 Cal.Rptr. 308 (1987). The "[c]onduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Davidson v. City of Westminister*, 32 Cal.3d 197, 209, 185 Cal.Rptr. 252 (1982) (quoting *Cervantez v. J.C. Penney Co.*, 24 Cal.3d 579, 593, 156 Cal.Rptr.198 (1979)). Conduct is extreme and outrageous when it is of a nature which is especially calculated to cause, and does cause, mental distress. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal.App.3d 590, 617, 262 Cal.Rptr. 842, 857 (1989).

To support an intentional infliction of emotional distress claim, the conduct must be more than "intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware." *Christensen v. Superior Court*, 54 Cal.3d 868, 903, 2 Cal.Rptr.2d 79 (1991). The California Supreme Court has further explained:

> "The law limits claims of intentional infliction of emotional distress to egregious conduct toward plaintiff proximately caused by defendant." . . . The only exception to this rule is that recognized when the defendant is aware, but acts with reckless disregard, of the plaintiff and the probability that his or her conduct will cause severe emotional distress to that plaintiff. . . . Where reckless disregard of the plaintiff's interests is the theory of recovery, the presence of the plaintiff at the time the outrageous conduct occurs is recognized as the element establishing a higher degree of culpability which, in turn, justifies recovery of greater damages by a broader group of plaintiffs than allowed on a negligent infliction of emotional distress theory. . . .

*Christensen*, 54 Cal.3d at 905-906, 2 Cal.Rptr.2d 79 (citations omitted.)

"In the context of debt collection, courts have recognized that the attempted collection of a debt by its very nature often causes the debtor to suffer emotional distress." *Ross v. Creel Printing & Publishing Co.,* 100 Cal.App.4th 736, 745, 122 Cal.Rptr.2d 787 (2002) (citing *Bundren v. Superior Court,* 145 Cal.App.3d 784, 789, 193 Cal.Rptr. 671 (1983)). "Frequently, the creditor intentionally seeks to create concern and worry in the mind of the debtor in order to induce payment." *Bundren,* 145 Cal.App.3d at 789, 193 Cal.Rptr. 671. Such conduct is only outrageous if it goes beyond "all reasonable bounds of decency." *Bundren,* 145 Cal.App.3d at 789, 193 Cal.Rptr. 671.

"The assertion of an economic interest in good faith is privileged, even if it causes emotional

distress." *Ross,* 100 Cal.App.4th at 745, n. 4, 122 Cal.Rptr.2d 787 (citing *Fletcher v. Western National Life Ins. Co.,* 10 Cal.App.3d 376, 395, 89 Cal.Rptr. 78 (1970)); *Cantu v. Resolution Trust Corp.,* 4 Cal.App.4th 857, 888, 6 Cal.Rptr.2d 151 (1992). "In debtor/creditor cases, the privilege is qualified, in that it can be vitiated where the creditor uses outrageous and unreasonable means in seeking payment." *Ross,* 100 Cal.App.4th 736, 745, n. 4, 122 Cal.Rptr.2d 787 (citing *Symonds v. Mercury Savings & Loan Assn.,* 225 Cal.App.3d 1458, 1469, 275 Cal.Rptr. 871 (1990)).

The complaint fails to allege Wells Fargo's outrageous conduct to support an IIED claim. The complaint points to no conduct of Wells Fargo outside that generally accepted in debt collection and/or the foreclosure process, which is inherently stressful for debtors. The complaint identifies no severe emotional distress which Mr. Winding allegedly suffered. The IIED claim fails on its merits to warrant its dismissal.

## Declaratory And Injunctive Relief

The complaint seeks to enjoin further acts to interfere with Mr. Winding's business and a declaration "as to the respective rights and duties of the parties."

Wells Fargo notes that injunctive relief is a remedy, not a distinct claim, and that Mr. Winding is entitled to neither injunctive or declaratory relief with the failure of his claims.

"Equity will not interpose its remedial power in the accomplishment of what seemingly would be nothing but an idly and expensively futile act, nor will it purposely speculate in a field where there has been no proof as to what beneficial purpose may be subserved through its intervention." *Karlsen, v. American Sav. & Loan Assn.*, 15 Cal.App.3d 112, 117, 92 Cal.Rptr. 851 (1971). "Injunctive relief is a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief may be granted." *Shell Oil Co. v. Richter*, 52 Cal.App.2d 164, 168, 125 P.2d 930 (1942).

The complaint lacks facts to support injunctive relief, especially given the absence in the record of foreclosure irregularities. No viable claim supports injunctive relief to doom an injunctive relief claim for Mr. Winding. In other words, injunctive relief fails with the complaint's claims.

The complaint also lacks a viable declaratory relief claim. The Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201, 2202, provides in pertinent part:

> In a case of actual controversy within its jurisdiction . . . any court of the United

States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. §2201(a).

The DJA's operation "is procedural only." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240, 57 S.Ct. 461, 463 (1937). "A declaratory judgment is not a theory of recovery." *Commercial Union Ins. Co. v. Walbrook Ins. Co., Ltd.*, 41 F.3d 764, 775 (1st Cir. 1994). The DJA "merely offers an *additional remedy* to litigants." *Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 21 (2nd Cir. 1997) (italics in original). A DJA action requires a district court to "inquire whether there is a case of actual controversy within its jurisdiction." *American States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994).

As to a controversy to invoke declaratory relief, the question is whether there is a "substantial controversy, between parties having adverse legal rights, or sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512 (1941). The United States Supreme Court has further explained:

> A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. . . . The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Haworth*, 300 U.S. at 240-241, 57 S.Ct. at 464 (citations omitted).

The failure of the complaint as a whole demonstrates the absence of an actual controversy subject to declaratory relief. A declaratory relief action "brings to the present a litigable controversy, which otherwise might only be tried in the future." *Societe de Conditionnement v. Hunter Eng. Co., Inc.*, 655 F.2d 938, 943 (9th Cir. 1981). In the absence of a viable claim, the complaint fails to support declaratory relief.

## **Federal Preemption**

Wells Fargo argues that all of the complaint's claims are preempted by the Home Owners Loan Act ("HOLA"), 12 U.S.C. §§ 1461, et seq., and its regulations given that World Savings, at the time of

Mr. and Mrs. Bowers' loan, operated as a federally-chartered saving bank under HOLA and regulated by the Office of Thrift Supervision ("OTS").

Congress enacted HOLA "to charter savings associations under federal law," *Bank of America v. City and County of S.F.*, 309 F.3d 551, 559 (9th Cir. 2002), *cert. denied*, 538 U.S. 1069, 123 S.Ct. 2220 (2003), and "to restore public confidence by creating a nationwide system of federal savings and loan associations to be centrally regulated according to nationwide 'best practices,'" *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 160-161, 102 S.Ct. 3014 (1982). HOLA and its regulations are a "radical and comprehensive response to the inadequacies of the existing state system," and "so pervasive as to leave no room for state regulatory control." *Conference of Fed. Sav. & Loan Ass'ns v. Stein*, 604 F.2d 1256, 1257, 1260 (9th Cir. 1979), *aff'd*, 445 U.S. 921, 100 S.Ct. 1304. "[B]ecause there has been a history of significant federal presence in national banking, the presumption against preemption of state law is inapplicable." *Bank of Am.*, 309 F.3d at 559.

Through HOLA, Congress gave OTS broad authority to issue regulations governing thrifts. *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1005 (9th Cir. 2008) (citing 12 U.S.C. § 1464).[4] OTS is empowered "to prescribe a nationwide system of operation, supervision, and regulation which would apply to all federal associations." *Glendale Federal Sav. and Loan Ass'n v. Fox*, 459 F.Supp. 903, 909 (D.C. Cal. 1978). The OTS regulations are "preemptive of any state law purporting to address the subject of the operations of a Federal savings association." 12 C.F.R. § 545.2.

OTS promulgated 12 C.F.R. § 560.2 ("section 560.2") as a preemption regulation, which "'has no less preemptive effect than federal statutes.'" *Silvas*, 514 F.3d at 1005 (quoting *de la Cuesta*, 458 U.S. at 153, 102 S.Ct. 3014)). Section 560.2(a) provides in pertinent part:

> . . .OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section . . .

---

[4] 12 U.S.C. § 1464(a)(1) empowers OTS "under such regulations as the [its] Director may prescribe . . . to provide for the organization, incorporation, examination, operation, and regulation of associations to be known as Federal savings associations (including Federal savings banks)."

15

Section 560.2(b) provides "the types of state laws preempted" by section 560.2(a) include:

> (4) The **terms of credit**, including amortization of loans and the deferral and capitalization of interest and **adjustments** to the interest rate, balance, **payments due**, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;
>
> (5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;
>
> . . .
>
> (9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;
>
> (10) Processing, origination**, servicing, sale or purchase of**, or investment or **participation** in, mortgages . . . (Bold added.)

As noted by the Ninth Circuit Court of Appeals in *Silvas*, 514 F.3d at 1005, OTS has outlined a proper analysis to evaluate whether a state law is preempted under the regulation:

> When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

OTS, Final Rule, 61 Fed.Reg. 50951, 50966-67 (Sept. 30, 1996).

Section 560.2(c) provides that the types of state laws "not preempted to the extent that they only incidently affect the lending operations of Federal savings associations" include, contract, commercial, real property and tort law. If preemption arises under section 560.2(b), section 560.2(c)'s carve out does not apply. For instance, in *Silvas*, 514 F.3d at 1006, the Ninth Circuit applied section 560.2(b) preemption to claims under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code, §§ 17200, et seq., and explained: "We do not reach the question of whether the law fits within the confines of [section 560.2(c)] because Appellants' claims are based on types of laws listed in paragraph (b) of 560.2, specifically (b)(9) and (b)(5)."

Wells Fargo characterizes the "heart" of the complaint's claims as "negotiable instrument" transfer and ownership and that allegations to such effect fall within section 560.2(b)(10) as challenge

16

to a "sale or purchase of" a "mortgage" originated by a saving bank. Wells Fargo is correct that section 560.2 preempts the complaint's allegations as to misconduct surrounding foreclosure originating from negotiable instrument issues. HOLA preemption further warrants dismissal of the complaint's claims given that they address "sale or purchase of . . . or participation in, mortgages."

### Attempt At Amendment And Malice

Since the complaint's claims are barred as a matter of law and preempted by federal law, Mr. Winding is unable to cure his claims by allegation of other facts and thus is not granted an attempt to amend.

Moreover, this Court surmises that Mr. Winding has brought this action in absence of good faith and that Mr. Winding seeks to exploit the court system solely for delay or to vex defendants. The test for maliciousness is a subjective one and requires the court to "determine the . . . good faith of the applicant." *Kinney v. Plymouth Rock Squab Co.*, 236 U.S. 43, 46 (1915); *see Wright v. Newsome*, 795 F.2d 964, 968, n. 1 (11th Cir. 1986); *cf. Glick v. Gutbrod*, 782 F.2d 754, 757 (7th Cir. 1986) (court has inherent power to dismiss case demonstrating "clear pattern of abuse of judicial process"). A lack of good faith or malice also can be inferred from a complaint containing untrue material allegations of fact or false statements made with intent to deceive the court. *See Horsey v. Asher*, 741 F.2d 209, 212 (8th Cir. 1984). An attempt to vex or delay provides further grounds to dismiss this action.

### CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. DISMISSES with prejudice this action against Wells Fargo;
2. DIRECTS the clerk to enter judgment in favor of defendant Wells Fargo, N.A. and against plaintiff Jacob Winding dba Top To Bottom Cleaning Service in that there is no just reason to delay to enter such judgment given that Mr. Winding's claims against Wells Fargo and Wells Fargo's alleged liability are clear and distinct from claims against and liability of any other defendant. *See* F.R.Civ.P. 54(b); and
3. ORDERS Mr. Winding, no later than January 31, 2011, to file papers to show cause why this Court should not dismiss this action against defendant Cal-Western Reconveyance Corporation.

**This Court ADMONISHES Mr. Winding that this Court will dismiss this action against defendant Cal-Western Reconveyance Corporation if Mr. Winding fails to comply with this order and fails to file timely papers to show cause why this Court should not dismiss this action against defendant Cal-Western Reconveyance Corporation.**

IT IS SO ORDERED.

Dated:    **January 21, 2011**                    /s/ Lawrence J. O'Neill
                                                                    UNITED STATES DISTRICT JUDGE